THOMAS M. KLUCZNIK *et al.*, Plaintiffs-Appellants, v. TOMMY NIKITO-
POULOS, Defendant-Appellee.

Second District   No. 2—86—0259

Opinion filed February 3, 1987.

Rory T. Weiler, of Elburn, for appellants.

Robert C. Becker, Jr., of Genoa, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs appeal from the judgment of the circuit court of De Kalb County denying them certain requested relief and awarding defendant damages on a counterclaim.

Plaintiffs filed a three-count complaint against the defendant on July 31, 1984. Count I alleged that defendant had breached a warranty contained in a restaurant lease and requested compensatory damages. Count II alleged fraud and requested punitive damages. Count III also alleged fraud and asked that plaintiffs be permitted to rescind the contract. Defendant filed a three-count counterclaim,

count I of which requested payment for food products delivered to plaintiffs. Counts II and III of the counterclaim are not involved in this appeal.

The relevant facts are as follows. Defendant, Tom Nikitopoulos, leased a portion of his building to William Iwans and Ted Yanik for use as a restaurant. The contract provided that Yanik and Iwans would lease the restaurant for five years beginning November 1, 1983. A rider drafted by Iwans' attorney was attached to the lease and provided that the lessor warranted that the heat and cooling systems were in good working order. Defendant apparently read the rider as he changed and initialed several other provisions contained in it. Plaintiffs, Thomas and Marcella Klucznik and Stanley and Charlotte Yanik, had an ownership interest in the restaurant, Rosati's Pizza, from its opening in November 1983, but only Mrs. Klucznik was personally involved in managing the restaurant at that time. Iwans left the business shortly after execution of the contract because he believed the business was undercapitalized. Yanik, who is Mrs. Klucznik's brother and Stanley and Charlotte Yanik's son, left the business in April 1984 at which time plaintiffs took over the lease. There was no formal assignment of the lease, but plaintiffs signed it in defendant's presence, and defendant then initialed it and thereafter recognized plaintiffs as his tenants.

The heat and air conditioning in the restaurant operate on a unified system. The heat was repaired in November 1983 at Rosati's expense, at which time no complaint or request for reimbursement was made to defendant. Although the heating system was later discovered to have been only partially functional during the winter of 1983-84, Mrs. Klucznik noticed no lack of heat at that time. She testified at the trial that shortly after taking over the lease in April 1984, she had a conversation with defendant during which he told her he didn't use air conditioning and that there was no air conditioning but he indicated that perhaps she could turn Rosati's air conditioning on in the back of the building. She called a repairman to check the air conditioning in June 1984 at which time the repairman told her that the heat and air conditioning operated on a single system consisting of three units, none of which was functioning. He gave her four possible repair approaches and an estimate for each, the minimum being $1,600. It is unclear whether any one approach alone would have sufficiently cooled and heated the restaurant. Mrs. Klucznik approached the defendant with the estimates, but he refused even to discuss them. No repair was made. The restaurant became very hot during the summer of 1984, driving customers away and causing plaintiffs to

close down for two months. Plaintiffs reopened at the end of August, but their business continued to suffer due to the lack of air conditioning and, later, lack of heat. In response to plaintiffs' complaints to the city of De Kalb, the city closed the restaurant in January 1985 for having insufficient heat.

Defendant testified at trial that he told Ted Yanik and William Iwans that the heat and cooling systems were not functioning when they executed the contract and that the parties agreed to reduce the monthly rent accordingly. He stated that he had no intention of deceiving anyone and that the rider's inclusion of a warranty provision was a mutual mistake by the parties.

The court found that defendant was obligated to provide heat and air conditioning and awarded plaintiffs $4,118.06 plus costs of their breach-of-warranty claim. The amount represented rent for January 1985 and the two month period in 1984 during which the restaurant was closed and reimbursement for the cost of repairing a freezer. The court refused to award lost profits, finding that such an award would be speculative. It also refused to grant rescission of the contract or to award punitive damages on the fraud counts. It concluded, however, that the lease had terminated without fault by plaintiffs in January 1985. The court then awarded defendant $394.43 on his counterclaim for food products delivered to plaintiffs.

Plaintiffs raise four arguments on appeal: (1) the trial court erred in refusing to grant rescission of the contract; (2) the court erred in failing to award plaintiffs lost profits or to reimburse them for amounts borrowed to keep the restaurant operating; (3) plaintiffs were entitled to punitive damages; and (4) the court erred in awarding damages to defendant.

I

■■■ Plaintiffs first contend that the trial court erred in ruling that plaintiffs' continued occupancy of the premises and other unspecified acts constituted an election against rescission. Rescission is an equitable remedy, the application of which is left largely to the discretion of the trial court. (*Luciani v. Bestor* (1982), 106 Ill. App. 3d 878, 882.) A reviewing court will not disturb that decision unless it clearly resulted from an abuse of discretion. 106 Ill. App. 3d 878, 882.

■■ We summarily reject plaintiffs' initial argument that no election against rescission is made simply because a plaintiff claims inconsistent or alternative remedies (see *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 1005; *Bozeman v. Sheriff* (1976), 42 Ill. App. 3d 228, 233), because the court's conclusion was clearly

based on the plaintiffs' actions rather than their pleadings. See *Walsh v. Oberlin* (1971), 2 Ill. App. 3d 987, 990.

■■ ■ Plaintiffs also argue that the election-of-remedies doctrine does not preclude seeking a remedy unless plaintiff has first manifested an intent to seek another, inconsistent remedy which causes the defendant to substantially change his position. (*Finke v. Woodard* (1984), 122 Ill. App. 3d 911, 919; *Altom v. Hawes* (1978), 63 Ill. App. 3d 659, 662.) However, a court will not grant rescission of a contract in any event where the status quo *ante* of the parties cannot be restored (*Bielby v. Bielby* (1929), 333 Ill. 478, 487; *Wilbur v. Potpora* (1984), 123 Ill. App. 3d 166, 172) or where the plaintiff's actions have created an impediment to the court's practical ability to restore it. (*Cf. Luciani v. Bestor* (1982), 106 Ill. App. 3d 878, 882 (noting that plaintiffs' continued operation of a business after learning of grounds to rescind contract made it virtually impossible for court to restore parties to status quo *ante*).) In the instant case, plaintiffs, by their own admission, learned that the air conditioning and heating systems were not functional in June 1984, yet they continued to occupy defendant's premises until January 1985, unnecessarily complicating any later rescission. Plaintiffs' offer to rescind, provided that defendant refund all monies previously paid under the contract—an offer defendant refused—was an insufficient rejection of the contract, as the law requires one who knows he has grounds to rescind to reject the contract promptly and to adhere to that decision. *Mollihan v. Stephany* (1975), 35 Ill. App. 3d 101, 103.

■■ In addition, the trial court effectively granted plaintiffs a partial rescission of their contract in concluding that the equipment failure resulted in a termination of the lease as of January 1985 without fault by the plaintiffs. The court's refusal to rescind the contract from the time plaintiffs took it over was not error, as a rescission for that period could only have been effected by a monetary award (see, *e.g., Cummings v. Dusenbury* (1984), 129 Ill. App. 3d 338, 345-46 (rescission requires granting an award to each party to the extent that the contract has benefitted the other); *Hakala v. Illinois Dodge City Corp.* (1978), 64 Ill. App. 3d 114, 120-21 (money damages are appropriate in rescission cases where actual restoration to *status quo* is impossible))—a remedy available at law. (See *Sta-Ru Corp. v. Mahin* (1976), 64 Ill. 2d 330, 333; *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 1021 (equitable remedy not available where there is an adequate remedy at law).) We conclude that the assessment of damages at law for this period is equally effective and no more complicated than would be the computations necessary to re-

store the parties to their status quo *ante* under a rescission theory. (*See Crosswood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 286 (the legal remedy is not adequate where computation of damages is impractical).) Under the circumstances, the court's refusal to grant rescission was not an abuse of discretion.

## II

Plaintiffs next claim that the trial court erred in refusing to award them lost profits. As evidence of their lost profits, plaintiffs produced monthly sales tax returns for the months of November 1983 through December 1984, and a single income statement prepared by plaintiffs' bookkeeper containing sales, cost of sales, expense, and net loss figures for the month of December and for 1984 cumulatively. The trial court concluded that this evidence was insufficient and would require the court to speculate in order to make the award.

■ The law does not require a plaintiff to establish lost profits with mathematical accuracy. (See, *e.g., P. A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1984), 130 Ill. App. 3d 987, 993.) It requires only that the evidence tends to establish a basis for assessing the amount with reasonable certainty. (See *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 148-49; *Reeder v. Old Oak Town Center* (1984), 124 Ill. App. 3d 1045, 1050.) In addition, the loss must be attributable to defendant's actions, and plaintiff's profits must have been reasonably contemplated by the parties at the time of contracting. *Vranas & Associates, Inc. v. Family Pride Finer Foods, Inc.* (1986), 147 Ill. App. 3d 995, 1007; *Mohr v. Dix Mutual County Fire Insurance Co.* (1986), 143 Ill. App. 3d 989, 997.

The record shows that Mrs. Klucznik first called a repairman to check the restaurant's air conditioning in June 1984, but the tax returns show that plaintiffs' May sales had already dropped dramatically (approximately 46%) from their April sales—indicating that the loss in business may have been seasonal or due to some other cause unrelated to a lack of air conditioning. The sales receipts for November through May therefore do not establish a reliable basis for accurately estimating the sales plaintiffs would have made in the months of June through September had the air conditioning been operating.

■ ■ However, our courts have frequently recognized that lost profits may appropriately be calculated by using profits realized in prior years. (See, *e.g., P. A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1984), 130 Ill. App. 3d 987, 993; *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 534; *Rhodes v. Sigler* (1976), 44 Ill. App. 3d 375.) Because Mrs. Klucznik was involved in the operation of

the restaurant from November 1983, we conclude that the sales figures for November and December 1983, a period unaffected by any substantial heat failure, are sufficiently reliable evidence on which the court could have calculated lost profits for the same months in 1984. These figures should accurately reflect any seasonal business trends, and the award can be made by reducing the difference in gross sales receipts by only those cost-of-sale items and other expenses which the court concludes were not fixed. See *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 148 (gross profits proper consideration when operating expenses are fixed); *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 534 (award can properly be based on evidence of gross profits where overhead costs constant and court has reasonable basis for estimating them); *cf. Monotronics Corp. v. Baylor* (1982), 107 Ill. App. 3d 14, 16-17 (upholding award based on gross profits realized by defendant who breached his fiduciary duty).

■■ However, since accurate comparison figures are unavailable for the remainder of 1984, lost profits cannot be assessed for that period with any reasonable accuracy. Similarly, plaintiffs' evidence failed to demonstrate an ability to produce any profit whatsoever on an annual basis. As a result, the court's refusal to award lost profits for the years 1985 through 1988 must be affirmed. Also, as discussed above, the court effectively granted rescission of the contract as of January 1985, precluding any award of compensatory damages for that period. *Finke v. Woodard* (1984), 122 Ill. App. 3d 911, 919-20.

## III

Plaintiffs next complain of error in the trial court's refusal to award as damages the amount of two business loans made to Stanley and Charlotte Yanik. One was a $20,000 bank loan made on April 23, 1984. The second was a promissory note for $18,000 issued by them on June 30, 1984.

■■ ■ It is axiomatic that a plaintiff can recover only those damages which proximately resulted from the defendant's breach. (*Feldstein v. Guinan* (1986), 148 Ill. App. 3d 610, 613.) At trial, Mrs. Klucznik stated only that the loan proceeds were used in the business. Plaintiffs produced no evidence that the loans were necessitated by the defendant's breach, and the bank loan was in fact made a full month prior to plaintiffs' first request for repair of the air conditioning. In addition, there was testimony at trial from which the court could reasonably have concluded that the loans were necessitated by plaintiffs' initial undercapitalization of the venture. We conclude that the trial court correctly refused to award those amounts as damages.

## IV

■■ Plaintiffs argue that the trial court also erred in refusing to award punitive damages on count II of their complaint. We disagree. Plaintiffs argue that the evidence clearly established defendant's intent to defraud them. The evidence at trial was conflicting, however, and we recognize that evaluation of witness credibility and conflicting evidence is appropriately left to the trier of fact. (*Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 932; *Luciani v. Bestor* (1982), 106 Ill. App. 3d 878, 888.) Additionally, even if the evidence conclusively established a fraud, punitive damages are disfavored in the law and are awarded only at the discretion of the trial court. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 839.) We conclude that the trial court did not abuse its discretion in denying them here.

## V

The trial court awarded defendant $394.43 on his counterclaim for supplies delivered to and accepted by plaintiffs. The amount was ordered set off against the judgment given plaintiffs. Plaintiffs argue that defendant failed to produce any evidence in support of his counterclaim and that plaintiffs' action in stipulating to the amount of the claims did not excuse defendant's failure to produce evidence. We disagree.

At trial, defendant's attorney requested that plaintiffs stipulate to the amount asked in the counterclaim. Plaintiff's attorney responded:

> "I'm not going to agree that we owe you the money, *** but I'll stipulate that the evidence would show that's the amount of the claim, and basically would say that, you know, we haven't paid it because, A, with respect to the product we claim set-off."

■■ The parties clearly made the stipulation to eliminate the need for defendant to produce evidence, and plaintiffs are now bound by their stipulation. See *Commonwealth Edison Co. v. Department of Local Government Affairs* (1984), 126 Ill. App. 3d 277, 293.

■■ Plaintiffs' final contention that defendant's breach of the lease excused their failure to pay for the supplies is also without merit. The lease was clearly an independent contract which made no reference to plaintiffs' anticipated purchase of restaurant supplies from defendant. Plaintiffs have not argued or produced evidence that the transactions were related or impacted upon one another, and defendant's breach of the lease therefore cannot excuse plaintiffs' failure to pay for restaurant supplies. (*Cf. Trapkus v. Edstrom's, Inc.*

(1986), 140 Ill. App. 3d 720 (where several agreements between the same parties are sufficiently interdependent, a party's breach of one agreement will discharge the other party's duties as to all of the agreements).) We must therefore affirm the trial court's setoff award to defendant.

For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed in part and reversed in part, and the cause is remanded with instructions to modify the award of damages to plaintiffs to include lost profits for November and December of 1984.

Judgment affirmed in part, reversed in part, and cause remanded.

HOPF and INGLIS, JJ., concur.