SAUL AZAR, Plaintiff-Appellant, v. OLD WILLOW FALLS CONDOMINIUM ASSOCIATION, Defendant-Appellee.

First District (6th Division)   No. 1—91—0271

Opinion filed February 28, 1992.—Rehearing denied April 20, 1992.

Ellis B. Levin, of Lamet, Kanwit & Davis, of Chicago, for appellant.

Marshall N. Dickler and Shelley R.Z. Barnett, both of Marshall N. Dickler, Ltd., of Arlington Heights, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Saul Azar, beneficial owner of 48 units in the Old Willow Falls Condominium, filed suit to enjoin defendant, Old Willow Falls Condominium Association, from levying a special assessment of $223,000 without obtaining approval from two-thirds of the condominium unit owners. Defendant filed a motion to dismiss plaintiff's claim for failure to state a cause of action, which the trial court granted. After plaintiff's motion for reconsideration was denied, he filed this appeal.

We adduce the following background from the affidavits, pleadings and documents filed. Plaintiff, together with Zal Horn and Alex Pinsky, is the beneficial owner of 48 condominium units in Old Willow Falls Condominium located in Prospect Heights, Illinois. First Illinois

Bank and Trust Co. of Evanston (First Illinois Bank) acted as trustee of the land trust. On August 24, 1990, defendant mailed to all unit owners, including plaintiff, the proposed budget for 1990-1991 due to be implemented on January 1, 1991. In the notice, defendant advised that the regular assessment would increase approximately 9.98%, and that each unit owner would incur an additional assessment for roof repairs and legal fees of $105.59 per unit each month.

On September 25, 1990, plaintiff requested at the meeting of defendant board that the proposed increase in the special assessment be voted upon by the unit owners. Defendant refused plaintiff's request and adopted the additional assessment.

On November 27, 1990, plaintiff filed suit seeking declaratory and injunctive relief to bar implementation of the special assessment. The trial court granted plaintiff's motion for an expedited ruling or preliminary injunction to bar enforcement of the special assessment. Azar also sought leave to file an amended complaint to join as plaintiffs First Illinois Bank, as trustee, and Horn and Pinsky, the other two beneficiaries of the land trust.

On December 19, 1990, the trial court granted defendant's motion to dismiss with prejudice pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), or alternatively, for judgment on the pleadings. The court also denied plaintiff's motion for leave to file an amended complaint. Specifically, the trial court held that plaintiff lacked standing and capacity to bring this cause of action because he has never been a unit owner at Old Willow Falls Condominium. The trial judge concluded that legal title to the subject property resides in the trustee, who was the proper and necessary party to the action.

In support of plaintiff's motion for reconsideration, Charles N. Goodnow, senior vice-president and trust officer of First Illinois Bank, submitted an affidavit stating that plaintiff has a 50% beneficial interest and that Pinsky and Horn each possess a 25% beneficial interest in the subject property. Goodnow stated that it has never been the policy of the bank to execute proxies to vote in condominium elections. The trust agreement governing the land trust provides that a beneficiary has the right to the management and control of the property, and that the land trustee has no such right. It was Goodnow's position that the execution of the proxies is a right personal to the beneficiaries of the trust, as it relates to the management and control of the property.

On appeal, plaintiff maintains that the trial court erroneously held that plaintiff lacked standing to bring this action; that the land

trustee and other beneficiaries should have been permitted to join the action as additional party plaintiffs; that the proposed increase should have been separately assessed; and that the size of the increase in the special assessment requires approval by two-thirds of the unit owners. (Relatedly, on this date we also filed our opinion in *First Chicago Trust Co. v. Old Willow Falls Condominium Association* (1992), 228 Ill. App. 3d 750, holding that plaintiff is considered a unit owner with voting rights, and that Azar may run as a candidate for the board of managers of defendant association).

We turn first to plaintiff's contention that the trial court erred in holding that, as a beneficial owner, plaintiff lacked standing to bring the present action.

■ We find a brief review of the relevant legal principles surrounding land trusts instructive for the resolution of this issue. In a land trust, the legal and equitable title lies with the trustee, and the beneficiary retains what is referred to as a personal property interest. (*People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540, citing *Chicago Federal Savings & Loan Association v. Cacciatore* (1962), 25 Ill. 2d 535, 185 N.E.2d 670.) In spite of its classification as a personal property interest, most of the usual attributes of real property ownership are retained by the beneficiary under the trust agreement. The only attribute of ownership ascribed to the trustee is that relating to title, upon which third parties may rely in transactions where title to the real estate is of primary importance. (*People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 389 N.E.2d 540.) Moreover, title to property does not necessarily involve ownership of the property; rather, title refers only to a legal relationship to the land, while ownership is comparable to control and denotes an interest in the real estate other than that of holding title thereto. (Restatement (Second) of Trusts §2, Comment *d*, §10, Comment *a* (1959).) Thus, it is readily apparent that true ownership in a land trust lies with the beneficiaries, although title lies with the trustee.

■ Applying these principles in this case, we find that the trial court erred in concluding that plaintiff, as beneficiary of a land trust, lacked standing to file the present lawsuit. This court has held that the beneficiary of a land trust is a proper party to litigation involving his rights and liabilities with respect to management and control, use, or possession of the property pursuant to the trust agreement. (*Department of Conservation v. Franzen* (1976), 43 Ill. App. 3d 374, 356 N.E.2d 1245.) One of the tests for determining the necessity or propriety of involvement of beneficiaries in litigation relating to land trust property is whether the trustee can protect the beneficiaries' in-

terests. (*Department of Conservation*, 43 Ill. App. 3d 374, 356 N.E.2d 1245; *Chicago Title & Trust v. Exchange National Bank* (1974), 19 Ill. App. 3d 565, 312 N.E.2d 11.) In this case, the trustee cannot adequately protect the interests of the beneficiary. The trust agreement expressly provides that the beneficiary has the right to the management and control of the property, and that the land trustee has no such right. In Goodnow's affidavit, he stated that it has never been the policy of the bank to become involved in the execution of proxies in condominium elections. It is therefore incumbent upon plaintiff, as beneficiary, to challenge the imposition of the special assessments as part of the management and control of the land trust, and to protect his interests. Plaintiff has standing to bring this cause of action.

■ Plaintiff next asserts that the land trustee, First Illinois Bank, and the other beneficiaries, Horn and Pinsky, should have been allowed to join the action as additional party plaintiffs. The trial judge refused to allow the plaintiff to file an amended complaint because it was not signed or verified by the land trustee.

We find that the trial judge's refusal to allow Azar to amend his complaint to add party plaintiffs was an abuse of discretion. However, in view of our holding that Azar has standing to bring this action, no further discussion of this issue is warranted.

■ Plaintiff further contends that the trial court erred when it dismissed plaintiff's complaint for failure to state a cause of action under section 9(d) of the Condominium Property Act. (Ill. Rev. Stat. 1989, ch. 30, par. 309(d).) That section provides in pertinent part:

> "Any non-recurring common expense, any common expense not set forth in the budget as adopted, and any increase in assessment over the amount adopted shall be separately assessed against all unit owners. Any such separate assessments shall be subject to approval by the affirmative vote of at least two-thirds of the unit owners duly called for the purpose of approving the assessment if it involves proposed expenditures resulting in a total payment assessed to a unit equal to the greater of 5 times the unit's most recent common expense assessment calculated on a monthly basis or $300."

The trial judge found that the legal fees, engineering and roof repairs were nonrecurring common expenses; however, they had been adopted by the board as part of its annual budget. The judge held that because plaintiff met only one of the conditions set forth in the first sentence of the Act, there was no need for a special assessment for the proposed expenditures.

We find rather that a plain reading of the first sentence in this section indicates that it is intended to be read disjunctively, and that meeting any one of the conditions is adequate to require the amount to be separately assessed. Legal fees and engineering and roofing costs should be characterized as nonrecurring expenses and require separate assessment. (See *Washington Courte Condominium Association—Four v. Cosmopolitan National Bank* (1988), 169 Ill. App. 3d 1059, 1061, 523 N.E.2d 1245 (maintenance of litigation is type of "nonrecurring common expense" which is proper subject matter of special assessment under the Condominium Property Act).) Thus, having met the criteria of nonrecurring expense, plaintiff established that the board of managers must separately assess these expenditures.

■ Finally, we turn to the question of whether prior approval by two-thirds of the unit owners is required for the proposed separate assessment. In the previous year's budget, the total amount paid for regular and special assessments was $380,000. In the proposed budget, the regular and special assessments totaled $552,950, representing an increase of $172,950.

According to section 9(d), a vote by two-thirds of the unit owners is required if the total payment assessed to a unit is equal to the greater of five times the unit's most recent common expense assessment calculated on a monthly basis, or $300. Application of this formula yields the following computations: previous year's expenditures ($380,000) divided by 12 months ($31,667) and multiplied by five equals $158,333, which is the amount of permissible increase over the previous year's assessment. The proposed increase of $172,950 exceeds the threshold cap of $158,333. Therefore, the board of managers must secure approval by two-thirds of the unit owners prior to the implementation of the special assessment.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

EGAN, P.J., and RAKOWSKI, J., concur.