FIRST DIVISION
March 31, 2008

No. 1-07-0738

| 23-25 BUILDING PARTNERSHIP, an Illinois Partnership, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|---|---|---|
| Plaintiff-Appellee/ Cross-Appellant, | ) ) ) | |
| v. | ) ) | |
| TESTA PRODUCE, INC., an Illinois Corporation, and PETER W. TESTA, an Individual, | ) ) ) ) | |
| Defendants-Appellants/ Cross-Appellees. | ) ) ) ) | Honorable Brigid Mary McGrath, Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

The parties in this case owned units in the South Water Market area in Chicago. An outside buyer agreed to purchase the entire subdivision if all the unit-owners agreed to sell. The defendants agreed to pay the plaintiff $50,000 as an inducement to agree to the sale. After the sale was complete, the defendants refused to pay the $50,000, contending the plaintiff fraudulently misrepresented that it needed the money because it was "upside down" in its mortgage.

Following a bench trial, the trial court entered judgment for the plaintiff, holding the defendants could not rescind their contract because they benefitted from the sale and because the parties could not be returned to their pre-contract position. The defendants appeal the trial court's judgment. The plaintiff

1-07-0738

cross-appeals the part of the trial court's order vacating the award of attorneys' fees.

We reverse the trial court's judgment for the plaintiff and affirm the court's order vacating the award of attorneys' fees.

FACTS

The South Water Market was a subdivision of real property comprising 166 units for merchants of produce and other foodstuffs. Sometime before July 2003, the City of Chicago encouraged the merchants occupying the units to relocate to a new site so the property could be redeveloped for residential use. A new facility known as the Chicago International Produce Market was established for the merchants.

The 23-25 Building Partnership (the "Partnership") rented and managed the units located at 23-25 South Water Market. The Partnership was owned by Edwin Roncone and his sons, Alan Roncone and Paul Roncone, each of whom owned a one-third interest in the partnership. From July 1993 to June or July 2003, legal title to the property was held by LaSalle Bank, NA, successor to American National Bank and Trust Company of Chicago, as Trustee, under Trust Agreement dated July 1, 1993, and known as Trust Number 117154-06 (the "Land Trust"). Edwin, Paul, and Alan Roncone were the beneficiaries of the Land Trust. In August 1994, the individual beneficiaries assigned their beneficial interest in the Land Trust to the Partnership.

2

Testa Produce, Inc. ("Testa Produce") is in the business of selling wholesale produce. Peter Testa is the president of Testa Produce. Before June 2003, Testa Produce owned and occupied three units in the South Water Market.

In January 2003, EDC Development Company ("EDC") agreed to purchase the bulk of units 1-166 of the South Water Market, pursuant to a Purchase and Sale Agreement (the "P&S Agreement"). The merchants were advised EDC would not buy the units unless it could buy all of the units. If any owner did not agree to sell, EDC would not purchase the property, and the other owners would lose the benefit of the P&S Agreement. Most of the owners, including Testa, quickly agreed to the terms of the agreement. Peter Testa and other unit-owners promoted the P&S Agreement among the other unit-owners. The Partnership did not initially agree to the sale.

In or around December 2002 or January 2003, Peter Testa had telephone conversations with Edwin Roncone seeking Roncone's consent to the P&S Agreement. According to Testa, Roncone told him that in the event of the sale, the Land Trust would be "upside-down," or $50,000 short, on its mortgage indebtedness. Roncone denies making these statements and alleges he told Testa he needed the additional $50,000 to pay other "obligations."

Following these conversations, Peter Testa prepared and signed a handwritten memorandum stating: "Testa Produce, Inc.

3

agree [sic] to pay $50,000 dollars towards the sale of Units 25 & 23 So. Water Mkt at Closing of said sale."  Testa personally handed the memorandum to Edwin Roncone.  Roncone was not satisfied with the handwritten document and asked his attorneys to draft a document memorializing the agreement.

On February 17, 2003, Testa Produce and Peter Testa signed and delivered to the Land Trust an agreement ("Inducement Agreement") prepared by Edwin Roncone's attorneys.  Roncone testified he signed the agreement and gave it to Testa.  The copy of the Inducement Agreement in the record is signed by Testa but not signed by Roncone.  It has a blank signature space for the Land Trust.

In the Inducement Agreement, Testa promised to pay to "the Land Trust or its order" $50,000 plus 12% interest per annum if the trust entered into the P&S Agreement and sold the subject property to EDC.  The money was payable on the closing of the sale of the property.

The Inducement Agreement included a provision awarding attorneys' fees and costs to the Land Trust if Testa failed to pay the Inducement Amount at or within two days of the closing of the sale of the subject property.

On February 17, 2003, the same day Testa signed the Inducement Agreement, the Land Trust executed the P&S Agreement.

Testa alleges that in May or June 2003, before the closing

4

of the Land Trust's units, he learned the Land Trust would receive sufficient funds at closing to pay off its mortgage debt. In other words, the Land Trust was not "upside down" in its mortgage obligations. Testa alleges he immediately informed Roncone he would not pay under the Inducement Agreement. At trial, Edwin Roncone admitted Peter Testa called him in June 2003 and accused him of lying about his mortgage indebtedness.

The closing of the sale of the Land Trust's units occurred on July 12, 2003. A June 13, 2003, letter from LaSalle Bank as trustee directs that the net proceeds from the sale of the property be paid to the Partnership.

Following the closing, the Partnership demanded payment of the $50,000. Testa refused, contending the Partnership fraudulently induced him to enter into the Inducement Agreement. The Partnership filed a breach of contract suit against Testa and Testa Produce.

The trial court entered judgment in favor of the Partnership and against the defendants, in the amount of $50,000, plus interest of $17,212.68, attorneys' fees of $27,454.25, and costs and expenses of $2,075.37, for a total of $96,742.30.

On reconsideration, the court affirmed the original judgment but vacated the award of attorneys' fees. The court held:

> "Based on the evidence adduced at trial, and
> considering both that the Defendants

5

> benefitted from the Plaintiff's performance
> of its obligations under the Inducement
> Agreement, but that they had been
> fraudulently induced into entering into that
> Agreement, the Court, in its discretion,
> agrees that it would defy common sense and
> public policy to award attorneys' fees to the
> Plaintiff under the Inducement Agreement."

DECISION

Before we address the issues in this appeal, we briefly comment on the woeful inadequacy of the briefs in this case. Both parties' briefs contain large portions of argument unsupported by any relevant citations.

Supreme Court Rule 341(h)(7) requires appellants' briefs to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." 210 Ill. 2d R. 341(h)(7). " '[A] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.' " In re Marriage of Auriemma, 271 Ill. App. 3d 68, 72, 648 N.E.2d 118 (1994), quoting Thrall Car Manufacturing Co. v. Lindquist, 145 Ill. App. 3d 712, 719, 495

6

1-07-0738

N.E.2d 1132 (1986).  Contentions unsupported by citation of authority fail to meet the requirements of Supreme Court Rule 341(h)(7) and may be forfeited.  Elder v. Bryant, 324 Ill. App. 3d 526, 533, 755 N.E.2d 515 (2001).

Though we do not find the issues forfeited, we caution the parties to adhere to the Supreme Court Rules or risk dismissal of their future appeals or the striking of their responsive briefs.

I. Standing

The defendants contend the Partnership lacked standing to file its lawsuit because the Partnership was not a party to the Inducement Agreement.  The only parties to the agreement were the defendants and the Land Trust.

In a land trust in Illinois, the trustee's sole purpose is to take and hold title to the trust res.  Smith v. First National Bank of Danville, 254 Ill. App. 3d 251, 264, 624 N.E.2d 899 (1993).  The trustee has no duties with respect to management and control of the property.  The beneficiary manages and exercises all rights of ownership, with the exception of holding title to the property.  Smith, 254 Ill. App. 3d at 264.  See Madden v. University Club of Evanston, 97 Ill. App. 3d 330, 333, 422 N.E.2d 1172 (1981) (individual beneficiary of trust lacked standing in action to foreclose mortgage on subject property because he did not have legal title to the property).

The beneficiary of a land trust has standing in litigation

7

involving his rights and liabilities with respect to management and control, use, or possession of the property pursuant to the trust agreement. Azar v. Old Willow Falls Condominium Ass'n, 228 Ill. App. 3d 753, 756, 593 N.E.2d 583 (1992). One test for determining the beneficiary's standing is whether the trustee can protect the beneficiary's interests. Azar, 228 Ill. App. 3d at 756-57. Standing is determined as of the date the lawsuit is filed. CSM Insurance Building, Ltd. v. Ansvar America Insurance Co., 272 Ill. App. 3d 319, 323, 649 N.E.2d 600 (1995).

The Partnership asserts its standing based on the fact that, following sale of the only property held by the trust, the Land Trust no longer existed. Therefore, the Partnership was the only entity that could enforce the Inducement Agreement. A trustee's conveyance of all the property held by the trust terminates the trust. National City Bank of Michigan/Illinois v. Northern Illinois University, 353 Ill. App. 3d 282, 289, 818 N.E.2d 453 (2004), citing Restatement (Second) of Trusts § 342 (1959); Chicago Title & Trust Co. v. Steinitz, 288 Ill. App. 3d 926, 933, 681 N.E.2d 669 (1997) (trustee's act of conveying entire corpus terminated the trust).

Furthermore, the Trust Agreement in this case grants the beneficiary the right to the "earnings, avails, and proceeds" of the property, and the Land Trust directed that "proceeds" from the sale be paid to the Partnership. Given the Partnership's

right to the property's proceeds, and the fact that the trustee could no longer protect the beneficiary's interests following termination of the trust, we find the Partnership has standing to pursue its lawsuit against Testa.

A related issue is whether the Inducement Agreement is valid where the trustee did not sign the agreement. Edwin Roncone testified he signed the Agreement on behalf of the Land Trust, but no copy of the agreement with Roncone's signature is in the record. The Trust Agreement prohibits a beneficiary from entering into a contract in the name of the trustee ("[n]o beneficiary hereunder shall have any authority to contract for or in the name of the Trustee or to bind the Trustee personally.") Not only was Roncone not the trustee, he owned only a one-third interest in the Partnership; the Partnership was the sole beneficiary of the Trust.

We agree with the trial court that neither the trustee's nor the beneficiary's signature was necessary to bind the defendants. If a document is signed by the party being charged, the other party's signature is not necessary if the document is delivered to that party and it indicates acceptance through performance. See Meyer v. Marilyn Miglin, Inc., 273 Ill. App. 3d 882, 891, 652 N.E.2d 1233 (1995). The parties stipulated that Testa signed the Inducement Agreement and delivered it to the Land Trust. Because the document was delivered to the trust, we presume the trust was

9

aware of its existence.  The evidence showed the Land Trust fully performed the Inducement Agreement by entering into the P&S Agreement and closing on the sale of the subject property.  The contract is not invalid based on the failure of the trustee to sign the document.

II. Rescission

The trial court held the defendants established through clear and convincing evidence that the Partnership induced them to enter into the contract through its fraudulent misrepresentation. Notwithstanding the fraud, the court held rescission was not available to the defendants because the parties could not be restored to their original positions.

A contract induced by fraud is not void but is voidable at the election of the party claiming to have been defrauded.  Zirp-Burnham, LLC v. E. Terrell Associates, Inc., 356 Ill. App. 3d 590, 604, 826 N.E.2d 430 (2005).  Although the perpetrator of the fraud cannot enforce a voidable contract, the innocent party may: (1) rescind the contract, or (2) waive the defect, ratify the contract, and enforce it.  Tower Investors, LLC v. 111 East Chestnut Consultants, Inc., 371 Ill. App. 3d 1019, 1030, 864 N.E.2d 927 (2007).

The party seeking to prevent the enforcement of a contract must promptly seek rescission of the contract.  Zirp-Burnham, 356 Ill. App. 3d at 604.  " 'Rescission is the cancelling of a

contract so as to restore the parties to their initial status.'" Illinois State Bar Association Mutual Insurance Co. v. Coregis Insurance Co., 355 Ill. App. 3d 156, 165, 821 N.E.2d 706 (2004). A reviewing court will not disturb the trial court's decision granting or denying rescission unless it clearly resulted from an abuse of discretion. Klucznik v. Nikitopoulos, 152 Ill. App. 3d 323, 327, 503 N.E.2d 1147 (1987).

Rescission is an equitable remedy. A party seeking rescission must restore the other party to the status quo before the contract took place. Coregis, 355 Ill. App. 3d at 165; Martin v. Heinold Commodities, Inc., 163 Ill. 2d 33, 57-58, 643 N.E.2d 734 (1994); Peddinghaus v. Peddinghaus, 314 Ill. App. 3d 900, 907, 733 N.E.2d 797 (2000). Restoration of the status quo requires the rescinding party to return any consideration it received from the other party under the contract. Martin, 163 Ill. 2d at 57-58; Fogel v. Enterprise Leasing Co. of Chicago, 353 Ill. App. 3d 165, 173, 817 N.E.2d 1135 (2004).

Where restoration of the status quo is impossible, it does not necessarily preclude rescission. "Restoration of the status quo ante will not be required when restoration has been rendered impossible by circumstances not the fault of the party seeking rescission, and the party opposing the rescission has obtained a benefit from the contract." International Insurance Co. v. Sargent & Lundy, 242 Ill. App. 3d 614, 629, 609 N.E.2d 842

1-07-0738

(1993), citing <u>John Burns Construction Co. v. Interlake, Inc.</u>,
105 Ill. App. 3d 19, 27, 433 N.E.2d 1126 (1982).  See also <u>Hakala
v. Illinois Dodge City Corp.</u>, 64 Ill. App. 3d 114, 120, 380
N.E.2d 1177 (1978), citing 77 Am. Jur. 2d Vendor and Purchaser §
565 (1975) (the party seeking rescission "is not required to put
the other party in the same situation in which he was before the
contract, where the latter has rendered it impossible by the
nature of his fraud or other act.")

Sometime between the Land Trust's execution of the P&S
Agreement and the closing, Peter Testa discovered the Land Trust
was not upside-down on its mortgage loan and told Roncone he
would not pay the $50,000.  Because the Land Trust had formally
agreed to sell the property to EDC, it was too late for
defendants to restore the Partnership to its pre-contract
position.  The consideration for payment of the $50,000 was the
Land Trust's execution of the P&S Agreement and the sale of the
subject property.  Testa could not return the consideration to
the trust.

It became impossible to place the Partnership in the
position it was in prior to the sale of the property to EDC.
This impossibility is not attributable to defendants but to the
fraudulent misrepresentations made by Roncone.  There is no
evidence the purchaser had any knowledge of the Inducement
Agreement.  Accordingly, we hold rescission is an available

12

1-07-0738

remedy to defendants.

To establish an equitable claim for rescission on the basis of fraud and misrepresentation, defendants must prove: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intended to induce the other party to act; (4) acted on by the other party in reliance on the truth of the representation; and (5) resulting damage. Fogel, 353 Ill. App. 3d at 171. A misrepresentation is "material" if the recipient would have acted differently had he been aware of the falsity of the statement, or if the person making it knew the statement was likely to induce the recipient to engage in the conduct in question. Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc., 285 Ill. App. 3d 201, 209-10, 673 N.E.2d 369 (1996).

The trial court held Roncone made a fraudulent misrepresentation when he told Testa the Partnership would be short $50,000 on its mortgage in the event of a sale. Peter Testa testified he would not have signed the Inducement Agreement if Edwin Roncone had not told him he was "upside-down" on his mortgage. Eugene Roffolo, another unit-owner, testified he overheard the telephone conversation between Peter Testa and Edwin Roncone. He heard Roncone say he was going to be short on his mortgage if he sold his units to EDC. Edwin Roncone denied being told that Roffolo was listening in on the conversation and

13

denied telling Testa he was "upside-down" in his mortgage.

Where factual findings are based on determinations of the witnesses' credibility, we generally defer to the trial court. The trial court, by virtue of its ability to observe the conduct and demeanor of witnesses, is in the best position to assess their credibility. In re Commitment of Sandry, 367 Ill. App. 3d 949, 980, 857 N.E.2d 295 (2006). The trial court's finding that the Partnership induced the defendants to enter into the Inducement Agreement through a fraudulent, material misrepresentation was not against the manifest weight of the evidence.

An issue raised by the rescission cases is whether the defendants are required to return the "benefit" they received. Where restoration of the other party to the status quo is impossible, the party seeking rescission generally must reimburse the other party for the value of the benefit it received under the contract. See Cummings v. Dusenbury, 129 Ill. App. 3d 338, 345-46, 472 N.E.2d 575 (1984) (rescission requires granting an award to each party to the extent the contract has benefitted the other); John Burns, 105 Ill. App. 3d at 27 (money damages are appropriate where actual restoration to status quo is impossible); Hakala, 64 Ill. App. 3d at 120 (same); Bucciarelli-Tieger v. Victory Records, Inc., 488 F. Supp. 2d 702, 712-13 (N.D. Ill. 2007) (plaintiffs could not maintain rescission claim

where they were unwilling to reimburse defendants for the benefits plaintiffs derived under the agreement). In those cases, however, rescission was based on unilateral or mutual mistake, and there was no evidence the party objecting to rescission committed fraud in inducing the other party to enter into the contract. See Cummings, 129 Ill. App. 3d at 345-47 (unilateral mistake); John Burns, 105 Ill. App. 3d at 25 (mutual mistake); Hakala, 64 Ill. App. 3d at 119 (mutual or unilateral mistake); Bucciarelli-Tieger, 488 F. Supp. 2d at 711 (no fraud on the part of defendants).

There is no doubt the defendants received some benefit from the Land Trust's agreement to sell its property. The parties agree the sale was an all-or-nothing deal. If all the unit-owners had not agreed to sell, EDC would have withdrawn its offer. The defendants received approximately $600,000 from the sale of their units; we do not know the amount of their net profit. The trial court's resolution of this issue was to enter judgment for the plaintiff on the Inducement Agreement but to disallow any attorneys' fees and costs. See Kleinwort, 285 Ill. App. 3d at 216 (trial court has discretion to "fashion an equitable remedy of rescission if the restoration of the status quo is impossible.")

We do not believe that allowing the Partnership to collect $50,000 under the Inducement Agreement is an equitable remedy.

15

The Partnership was not short on its mortgage indebtedness as it claimed. The Partnership would receive an unjust windfall if it were to profit from its fraud. In addition, it is impossible to calculate how much of the defendants' profit was due to the Partnership's agreement to sell. All the owners had to agree to sell; the collective group was responsible for the proceeds received by individual owners.

We find the Inducement Agreement is invalid as a product of the Partnership's fraudulent misrepresentation. We reverse the trial court's judgment awarding $50,000 plus interest to the Partnership.

Based on our holding invalidating the Inducement Agreement, we find the Partnership is not entitled to attorneys' fees and costs pursuant to the agreement. We affirm that part of the trial court's order refusing to grant attorneys' fees and costs to the Partnership.

CONCLUSION

We reverse the trial court's order entering judgment in favor of the plaintiff and against the defendants. We affirm the order vacating the award of attorneys' fees.

Affirmed in part and reversed in part.

CAHILL, P.J., and GARCIA, J., concur.

16

1-07-0738

| | |
|---|---|
| Please use following form: | 23-25 BUILDING PARTNERSHIP, an Illinois Partnership, |
| | Plaintiff-Appellee/ Cross-Appellant, |
| Complete TITLE of Case | v. |
| | TESTA PRODUCE, INC., an Illinois Corporation, and PETER W. TESTA, an Individual, |
| | Defendants-Appellants/ Cross-Appellees. |

| | |
|---|---|
| Docket Nos. | No. 1-07-0738 |
| COURT | Appellate Court of Illinois First District, 1st Division |
| Opinion Filed | March 31, 2008 |

| | |
|---|---|
| JUSTICES | JUSTICE WOLFSON delivered the Opinion of the court: |
| | CAHILL, P.J., and GARCIA, J., concur. |

| | |
|---|---|
| APPEAL from the Circuit Court of Cook County; the Hon._____, Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin: |
| | Appeal from the Circuit Court of Cook County. |
| | The Hon. Brigid Mary McGrath, Judge Presiding. |

| | |
|---|---|
| For APPELLANTS, John Doe, of Chicago. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented. |
| For APPELLEES, Smith and Smith, of Chicago. | For Defendants-Appellants/Cross-Appellees: Ronald L. Sandack and John N. Rooks, GAIDO & FINTZEN, of Chicago. |
| (Joseph Brown, of counsel). | For Plaintiff-Appellee/Cross-Appellant: James E. Mahoney, GRIFFITH & JACOBSON, LLC, of Chicago. |
| Also add attorneys for third-party appellants and/or appellees. | |
| | (USE REVERSE SIDE IF NEEDED) |

17