# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60129

United States Court of Appeals
Fifth Circuit

**FILED**

March 14, 2016

Lyle W. Cayce
Clerk

PORTIA B. ISHEE,

      Plaintiff - Appellant

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, also known as Fannie Mae; GREEN TREE SERVICING, L.L.C.,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:13-CV-234

Before JOLLY and JONES, Circuit Judges, and MILLS,* District Judge.

PER CURIAM:**

      Plaintiff-Appellant Portia Ishee brought suit against Federal National Mortgage Association ("Fannie Mae") and Green Tree L.L.C., alleging breach of contract, willful breach of contract, conversion, fraud, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress,

---

    * District Judge of the Northern District of Mississippi, sitting by designation.

    ** Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60129

defamation, violations of the Fair Debt Collection Practices Act ("FDCPA"),[1] violations of the Real Estate Settlement Procedures Act ("RESPA"),[2] and violations of the Mississippi S.A.F.E. Mortgage Act ("SAFE Act").[3]  This is an appeal of the district court's order entered on February 6, 2015, granting summary judgment in favor of appellees Fannie Mae and Green Tree L.L.C., and dismissing all claims.

For the reasons set forth below, we reverse and remand in part, vacate and remand in part, and affirm in part.  Specifically, we reverse the district court's holding that no genuine issue of material fact existed regarding whether there was an agency relationship between Fannie Mae and its previous loan servicer, GMAC.  We vacate the portion of the district court's decision dismissing Ishee's vicarious liability-based claims against Fannie Mae for emotional distress, conversion, fraud, breach of the duty of good faith and fair dealing, defamation, and breach of contract, since the district court's dismissal of those claims was based entirely on its finding that there was no genuine issue of material fact regarding whether an agency relationship existed between Fannie Mae and GMAC.  We affirm the district court's decision in all other respects.

I.

Ms. Ishee executed a deed of trust and signed a promissory note in November 2006 in favor of GMAC Mortgage, LLC encumbering her homestead in the principal amount of $100,000. Fannie Mae bought the note in December 2006, pursuant to a mortgage selling and servicing contract between Fannie Mae and GMAC.  GMAC continued to service the loan.

---

[1] 15 U.S.C. § 1692, *et seq.*
[2] 12 U.S.C. § 2601, *et seq.*
[3] MISS. CODE ANN. § 81-18-3, *et seq.*

2

No. 15-60129

A fire destroyed Ms. Ishee's home in September 2010. Ms. Ishee had home owner's insurance through Alfa Insurance. On November 4, 2010, Alfa issued a check to GMAC in the amount of $99,623.48—the payoff amount provided by GMAC to Alfa's adjuster. GMAC received the check, but did not apply the funds to Ms. Ishee's account. Instead, GMAC deposited the money to escrow, and designated Ms. Ishee's payment as "unapplied funds." GMAC conducted inspections of the destroyed property on December 30, 2010, and again on January 13, 2011, both times charging the inspections to Ms. Ishee's account. GMAC continued to hold the funds as "unapplied," and force-placed insurance on the now-vacant lot at Ms. Ishee's expense. Ms. Ishee made multiple requests for GMAC to apply the insurance funds to her account. GMAC refused to do so, contending that even if it were to apply the insurance proceeds to Ms. Ishee's account, there would still remain a balance owed due to late fees, interest, insurance fees, and inspection fees. GMAC eventually began foreclosure proceedings.

GMAC declared bankruptcy in May 2012, and Green Tree acquired the rights to service the loan. Relying on GMAC's records, Green Tree initially considered Ms. Ishee to be in default, and continued with foreclosure. Green Tree, however, soon learned that GMAC was in possession of Ms. Ishee's insurance proceeds. Green Tree promptly credited the proceeds to her account, forgave any "late fees," and refunded any payments that Ms. Ishee was forced to make as a result of GMAC's apparent misconduct.

Ms. Ishee brought this action against the defendants, alleging that, under Mississippi agency law, Fannie Mae was liable for the actions of its loan servicers, GMAC and Green Tree. Ishee also alleged that Green Tree was liable for GMAC's actions as a successor in interest. She demanded actual damages, emotional damages, punitive damages, interest, and attorney's fees.

3

No. 15-60129

On August 22, 2014, Fannie Mae and Green Tree moved for summary judgment on all of Ms. Ishee's claims.  Ms. Ishee also moved for partial summary judgment as to liability for several of her claims.  On February 6, 2015, the district court granted the Appellees' motions for summary judgment, based in large part on its finding that Fannie Mae was not liable for the actions of its loan servicers.  The court further found that Green Tree was not responsible for the actions of GMAC, and that Green Tree had not itself committed any breach of contract.  The court denied Ms. Ishee's motions for partial summary judgment, and dismissed her remaining claims.

II.

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the district court.  *E.E.O.C. v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999).  The party moving for summary judgment bears the burden of informing the court of the basis for its motion, and identifying the portions of the record that demonstrate the absence of a genuine issue of material fact.  *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  The non-movant then must come forward with specific facts showing there is a genuine issue for trial.  *Id.*  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.,* 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  We review all facts in the light most favorable to the non-movant and affirm only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Washburn*, 504 F.3d at 508; Fed. R. Civ. P. 56(c).  Should we conclude that evidence exists so as to create a genuine issue of material fact – such that the matter should have gone to trial – this Court must reverse and remand.

4

No. 15-60129

III.

Although the parties have developed many claims, the primary issue is whether Fannie Mae may be liable for the actions of its servicers.  Finding that no agency relationship existed between Fannie Mae and its servicers, the district court granted summary judgment in favor of the defendants and consequently dismissed Ms. Ishee's claims.

"Under Mississippi agency law, a principal is bound by the actions of its agent within the scope of that agent's real or apparent authority."  *Miller v. Shell Oil Co.*, 783 So. 2d 724, 727 (Miss. Ct. App. 2000).  Mississippi law provides the framework by which we determine whether a party is an independent contractor or an employee:

> [1] Whether the principal master has the power to terminate the contract at will; [2] whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; [3] whether he furnishes the means and appliance for the work; [4] whether he has control of the premises; [5] whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; [6] whether he has the right to prescribe and furnish the details of the kind and character of work to be done; [7] whether he has the right to supervise and inspect the work during the course of employment; [8] whether he has the right to direct the details of the manner in which the work is to be done; [9] whether he has the right to employ and discharge the subemployees and to fix their compensation; [10] and whether he is obliged to pay the wages of said employees.

*Woodring v. Robinson*, 892 F. Supp. 2d 769, 776 (S.D. Miss. 2012) (citing *Kisner v. Jackson*, 159 Miss. 424, 132 So. 90 (1931)).

As this non-exhaustive list of factors indicates, Mississippi agency law is principally concerned with the issue of control.  *Kossuth Trucking, Inc. v. Caterpillar, Inc.*, 941 So. 2d 903, 907 (Miss. Ct. App. 2006) ("With all the variations in tests, and despite some indications already mentioned that none of the factors are more important than the others, the principal focus now is on

the issue of control."). The district court found that there was no genuine issue of material fact regarding whether Fannie Mae exercised sufficient control over GMAC to establish an agency relationship. In deciding that Fannie Mae did not exercise sufficient control over GMAC's actions to establish an agency relationship, the district court focused principally on the Servicing Guide, a document prepared by Fannie Mae for its loan servicers, and meant to "set forth the broad parameters under which servicers should use their sound professional judgment as mortgage servicers in the performance of their duties."

We agree that the Servicing Guide, on its own, does not show that Fannie Mae exercised sufficient control over GMAC's actions to create a genuine issue of fact regarding whether an agency relationship existed between Fannie Mae and its servicers. The Servicing Guide, however, is not dispositive on the issue of agency. The evidence pertaining to the Reports of Hazard Insurance Loss documents (better known as "Form 176s") does create a genuine issue of fact regarding whether Fannie Mae exercised sufficient control over GMAC's actions to establish an agency relationship.[4]

A Form 176 is a report that Fannie Mae requires its loan servicers to submit documenting the receipt of property loss insurance. Importantly, these reports also include "recommendations" from the loan servicer regarding what should be done with received insurance proceeds (e.g., accept a pay-off, apply insurance proceeds to mortgage debt). Fannie Mae, in turn, reviews these

---

[4] The district court considered the Form 176s when deciding whether Fannie Mae ratified GMAC's wrongful conduct. The court, however, did not address whether the Form 176s established "control" sufficient to impose vicarious liability irrespective of whether GMAC relayed to Fannie Mae the information necessary to make an informed decision regarding Ms. Ishee's loan. *See, e.g.*, *Lane v. Oustalet*, 873 So. 2d 92, 95–96 (Miss. 2004) ("The law of agency generally imputes knowledge and information received by an agent in conducting the business of a principal to the principal, even where that knowledge or information is not communicated by the agent to the principal.").

recommendations, either endorsing them or voicing its objections to the servicer's proposed course of action.  Furthermore, as a Fannie Mae representative testified, Fannie Mae's loan servicers "were required to abide by Fannie Mae's decisions" regarding whether to carry out the "recommendation" stated in a Form 176.  The lone Form 176 in the record is between Fannie Mae and Green Tree.  GMAC also submitted Form 176s to Fannie Mae, but they have since been destroyed pursuant to Fannie Mae's document retention policy.

Simply put, this evidence regarding the way in which Form 176s were used undercuts Fannie Mae's assertions that its loan servicers are able to conduct their routine servicing duties without the need for Fannie Mae's direct involvement or approval.  Stated differently, the Form 176s, when viewed in the light most favorable to Ishee, arguably show that Fannie Mae expected to be informed when insurance proceeds were received by a servicer, and that Fannie Mae had input regarding how those insurance proceeds were to be applied to the plaintiff's account.  Drawing all reasonable inferences in favor of Ms. Ishee, a jury could find that these documents show that Fannie Mae exercised a degree of control over its loan servicers—including GMAC— sufficient to establish an agency relationship.

Fannie Mae contends that the Form 176 in the record does nothing to establish an agency relationship between Fannie Mae and GMAC, as the document concerns Fannie Mae's relationship with GMAC's successor, Green Tree.  Testimony from Fannie Mae's own representatives, however, indicates that GMAC also submitted Form 176s to Fannie Mae, and that these documents also included servicer "recommendations" regarding Ms. Ishee's

mortgage.[5]   There is also testimony from Fannie Mae representatives that Fannie Mae gave instructions to GMAC regarding what to do with Ms. Ishee's insurance proceeds, telling GMAC to "continue with foreclosure and reduce the foreclosure bid amount by the insurance proceeds."

At oral argument, Fannie Mae acknowledged that it did give specific instructions to GMAC regarding what to do with Ms. Ishee's insurance proceeds.[6]   Fannie Mae nevertheless contends that it exercised no control over GMAC because GMAC ultimately failed to comply with Fannie Mae's instructions.   Elsewhere in testimony, however, Fannie Mae representatives conceded that all loan servicers, including GMAC, were "required to abide by Fannie Mae's decisions" with respect to actions recommended in Form 176 reports.   A jury may well decide that GMAC's failure to abide by Fannie Mae's instruction is indicative of a lack of the control needed to establish an agency relationship, notwithstanding the testimony that, pursuant to their relationship, GMAC was "required" to abide by Fannie Mae's instructions regarding the recommendations set forth in Form 176 documents.   At the summary judgment stage, however, this Court's task is simply to determine if a genuine issue of material fact exists, not to weigh conflicting evidence. Because we find, on the record before us, that a genuine issue of material fact exists regarding whether there was an agency relationship between Fannie Mae and GMAC, we reverse the district court's grant of summary judgment on this issue.

Furthermore, we vacate the district court's order dismissing Ishee's vicarious liability-based claims against Fannie Mae for infliction of emotional

---

[5] As stated, these documents are unavailable only because Fannie Mae destroyed them pursuant to its document retention policy

[6] In fact, Fannie Mae's statements at oral argument indicate that GMAC lacked the authority apply the proceeds to Ishee's delinquent account without first receiving Fannie Mae's approval.

distress, conversion, fraud, breach of the duty of good faith and fair dealing, defamation, and breach of contract, because the district court's dismissal of these claims was based entirely on its finding that there was no genuine issue of material fact regarding whether an agency relationship existed between Fannie Mae and GMAC.  In vacating the district court's dismissal of these claims, we stress that we make no determination regarding Fannie Mae's ultimate liability.[7]  Still, given that the district court has yet to consider the merits of Ms. Ishee's claims based on GMAC's conduct, we decline to do so for the first time on appeal.

## IV.

On all remaining issues, however, we affirm the district court's judgment.  First, we affirm the district court's grant of summary judgment in Green Tree's favor on the claims alleging vicarious liability.  There are, ostensibly, two avenues by which Green Tree may be liable for the actions of GMAC: (1) as GMAC's successor in interest, and (2) by ratifying the actions of GMAC.  We address each briefly.

As succinctly explained by the District Court,

> The general rule in Mississippi is "that a corporation which acquires all of the assets, but no stock, of another corporation does not also acquire the debts and liabilities of the original." There are only four exceptions to the general rule: "(1) When the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) When the transaction may be considered a de facto merger; (3) When the successor may be considered a mere continuation of the predecessor; or (4) When the transaction was fraudulent."

---

[7] For example, we question whether Ishee can recover for GMAC's alleged breach of contract when it appears that Green Tree has already repaid her for any loss resulting from GMAC's misconduct.  We also note that Fannie Mae originally raised an affirmative defense to any agency-based claims under *Federal Crop Insurance Co. v. Merrill*, 332 U.S. 380 (1947). The defense was argued to the district court, but not addressed in the district court's opinion. The issue was not briefed on appeal.

*Ishee v. Fed. Nat'l Mort. Ass'n*, 2015 WL 518682, at *10 (S.D. Miss. Feb. 6, 2015) (quoting *Huff v. Shopsmith,* 786 So. 2d 383, 387–88 (Miss. 2001) (internal citation omitted).

Green Tree came to service Ms. Ishee's loan following GMAC's bankruptcy and the subsequent sale of its assets. The bankruptcy court's order explicitly stated that Green Tree purchased the servicing rights "free and clear" of any vicarious liability claims based on GMAC's conduct. Accordingly, the district court did not err in granting Green Tree's motion for summary judgment on this ground. Furthermore, regarding Ms. Ishee's theory that Green Tree "ratified" the actions of GMAC after taking over the loan servicing contract, there is no evidence to support her claim. In fact, all evidence points to the opposite conclusion. After a brief investigation into the status of Ms. Ishee's loan and property, Green Tree applied the insurance funds to the note, canceled the deed of trust, refunded the excess funds to Ms. Ishee, and otherwise righted the wrongs committed by GMAC. By the time the district court issued its judgment, Ms. Ishee's note was paid in full, her property released, and she was refunded a total of $1,474.56. As opposed to ratifying the actions of GMAC, it appears that Green Tree successfully dismantled the wrongful actions taken by GMAC. Accordingly, the district court was correct in the granting of summary judgment in favor of Green Tree on the issue of ratification and/or successor in interest liability.

We also affirm the district court's grant of summary judgment regarding any breach of contract claim based on either Green Tree's or Fannie Mae's own actions. Ishee has identified no contract provision that Fannie Mae breached, as she instead points only to the contract provisions regarding loan servicers' obligations. Regarding Green Tree, Ms. Ishee has offered no evidence of breaching conduct on Green Tree's part. Indeed, as stated, the evidence shows that, upon learning of GMAC's alleged misconduct, Green Tree promptly

corrected the situation by applying the insurance proceeds to Ms. Ishee's account and forgiving any fees accrued during the delay.

Regarding Ms. Ishee's RESPA claim, we agree with the district court's conclusion that Ms. Ishee's complaint, which contains only a passing reference to RESPA, does not allege a sufficient RESPA claim. We further affirm the grant of summary judgment against Ms. Ishee's SAFE Act claims, since Ms. Ishee does not dispute that the SAFE Act does not create a private cause of action. We also affirm the district court's grant of summary judgment regarding Ms. Ishee's FDCPA claims. Ms. Ishee has alleged only that Green Tree was a "debt collector" under the statute, and Ms. Ishee does not take issue with the district court's finding that she failed to offer any evidence that Green Tree violated the FDCPA.

Lastly, with respect to any tort claims based on either Fannie Mae's or Green Tree's own conduct, Ms. Ishee does not meaningfully address the district court's dismissal of these claims on appeal. Accordingly, we affirm the district court's grant of summary judgment on these claims. *See Douglas W. ex rel. Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 210–11 n. 4 (5th Cir. 1998) (per curiam) (even when the appellant listed a legal question in his statement of issues, his "failure to provide any legal or factual analysis of [the] issue on appeal waive[d] that issue.").[8]

## V.

For the foregoing reasons, we REVERSE the district court's grant of summary judgment regarding whether an agency relationship existed between Fannie Mae and GMAC. We VACATE the portion of the district court's

---

[8] After Fannie Mae and Green Tree filed motions for summary judgment, Ms. Ishee filed separate motions for partial summary judgment regarding her breach of contract, conversion, defamation, infliction of emotional distress, and RESPA claims. She also sought summary judgment in her favor regarding the issue of agency. For the reasons stated, we affirm the district court's denial of these motions for partial summary judgment.

No. 15-60129

decision dismissing Ishee's vicarious liability-based claims against Fannie Mae for infliction of emotional distress, conversion, fraud, breach of duty of good faith and fair dealing, defamation, and breach of contract, because the district court's dismissal of those claims was based entirely on its finding that there was no genuine issue of material fact regarding whether an agency relationship existed between Fannie Mae and GMAC.  We AFFIRM dismissal of Green Tree and AFFIRM the district court's decision in all other respects. We REMAND for proceedings consistent with this opinion.

**REVERSED IN PART; VACATED IN PART; AFFIRMED IN PART; REMANDED.**