2020 IL App (1st) 181497-U

THIRD DIVISION
October 28, 2020

No. 1-18-1497

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SPECIALIZED LOAN SERVICING, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CH 10694 |
| | ) | |
| GRACE KOVITZ; MARC A. KOVITZ; | ) | |
| GMAC MORTGAGE CORPORATION d/b/a | ) | |
| DITECH.COM; ILLINOIS HOUSING DEVELOPMENT | ) | |
| AUTHORITY; UNKNOWN OWNERS; and | ) | |
| NON-RECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Ditech Financial, LLC d/b/a Ditech, Third-Party Counter- | ) | Honorable |
| defendant-Appellee; Grace Kovitz and Marc A. Kovitz, | ) | Anna M. Loftus, |
| defendants-Counterplaintiffs-Appellants). | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County granting plaintiff's motion for summary judgment of foreclosure; defendants' affirmative defense was precluded by the terms of a previously entered order in the mortgage originator's chapter 11 bankruptcy proceeding which indemnified the purchasers of the mortgage loan and its successors from liability stemming from the mortgage originator's conduct prior to the sale.

¶ 2    In 2004, Grace Kovitz and Marc A. Kovitz (collectively defendants) refinanced their home with GMAC Mortgage Corporation (GMAC), paid off their original first mortgage, and received a new mortgage and home equity loan (HELOC) with GMAC.  It is uncontroverted that at some point defendants defaulted on their mortgage payments.  Defendants exchanged a number of letters and telephone calls with GMAC claiming GMAC fraudulently induced them to refinance their home by misrepresenting the value of their home.  Defendants alleged GMAC used procedures which over estimated the value of the home and misrepresented how those valuations were obtained.

¶ 3    In 2012, GMAC filed a chapter 11 bankruptcy (11 U.S.C. § 101 *et seq*. (West 2012)).  In that proceeding, the bankruptcy court ordered GMAC assets, including defendants' mortgage, to be sold.  The order further provided and ordered that the purchasers of the assets and any successor purchasers be indemnified from any claims or defenses stemming from wrongdoing by GMAC including defaults, breaches, acts, or omissions.  The bankruptcy court also ordered any party who had a claim for money damages against GMAC to file a proof of claim within the time allowed by the court or the claims against GMAC would be extinguished.  The time to file claims lapsed and defendants did not file a claim in the bankruptcy case.

¶ 4    In 2014, a successor owner of defendant's mortgage filed a foreclosure complaint against defendants.  Ditech, who shall be referred to herein as plaintiff or Ditech, became a subsequent purchaser of the mortgage and substituted as plaintiff in this case.  Defendants filed an affirmative defense alleging fraudulent inducement by GMAC.  Ditech, in response to the affirmative defense, argued the bankruptcy court sale order indemnified subsequent purchasers of GMAC assets from claims of misconduct by GMAC.  Therefore, the affirmative defense alleging fraud in the inducement by GMAC could not be used against them.  Defendants then

alleged they rescinded the mortgage contract and that the mortgage contract was void.

Defendants therefore agued the mortgage was not an asset subject to being sold at the bankruptcy

sale and, as such, was not subject to the bankruptcy order's indemnification protections. The

circuit court rejected this argument and entered summary judgment for plaintiff with respect to

the foreclosure complaint and defendants' affirmative defense. The court subsequently entered

an order of sale, and the sale was approved. Defendants timely appealed. For the following

reasons we affirm the judgment of the circuit court.

¶ 5                                          BACKGROUND

¶ 6      On September 11, 2004, defendants executed a HELOC agreement with GMAC for

$56,000 on their property located at 1445 Nottingham Lane, Hoffman Estates, Illinois 60195

(Property). On December 13, 2004, defendants refinanced their existing mortgage and entered

into a mortgage agreement (Mortgage) with GMAC for $160,000.

¶ 7                                      GMAC's Bankruptcy

¶ 8      On May 14, 2012, GMAC filed for bankruptcy under chapter 11 in the United States

Bankruptcy Court for the Southern District of New York (Bankruptcy Action). On November

21, 2012, the bankruptcy court entered an order approving the sale of GMAC's assets,

specifically, its mortgage origination and servicing platform, to Ocwen Loan Servicing, LLC

(Ocwen) pursuant to an asset purchase agreement (Bankruptcy Sale Order). The Bankruptcy

Sale Order set out terms and conditions for the authorization of the sale and provided certain

indemnifications to Ocwen and its successors against GMAC's claims and liabilities occurring

prior to the sale closing. The fifty-four page order entered under various sections of the

Bankruptcy Code including section 363 (11 U.S.C.A. § 363 (West 2012)) made findings that the

bankruptcy court had jurisdiction, the relevant statutory predicates had been met, notice had been

- 3 -

1-18-1497

provided with respect to the Bankruptcy Action as well as the sale of assets to include by publication, the sale was an arm's length transaction by a good faith purchaser and was in the best interests of the debtors, creditors, and other parties in interest. The Bankruptcy Sale Order further provides for the indemnification of Ocwen and its successors from claims against GMAC originating prior to the sale as follows:

> "**Necessity of Order.** The Purchaser would not have entered into the Ocwen APA [Asset Purchase Agreement] and would not consummate the Transactions without all of the relief provided for in this Order (including that (1) the transfer of the Purchased Assets to Purchaser be free and clear of all Interests and including rights or Claims based upon successor or transferee liability, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing Date, and (2) the Purchaser not be liable for any Cure Amounts or any other pre-Closing liabilities with respect to any Assumed Contracts). The consummation of the Transactions pursuant to this Order and the Ocwen APA is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest. The Purchaser has agreed to this Transaction with the intent of purchasing the Purchased Assets and does not and would not agree to assume anything other than the Assumed Liabilities.

> \* \* \* \*

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

- 4 -

\* \* \* \*

**Injunction.** \*\*\* No Person shall assert, and the Purchaser and the Purchased Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), Liabilities, Claims, and Interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser of the Debtors, or any obligation of any other party, under or with respect to, any Purchased Assets (including, without limitation, an Assumed Contract), with respect to any act or omission that occurred prior to the Closing or with respect to any Other Agreement or any obligation to Debtors that is not an Assumed Liability.

\* \* \* \*

**No Successor Liability.** Neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing."

¶ 9     The sale to Ocwen closed on February 15, 2013.

¶ 10             Circuit Court Foreclosure Proceedings Against Defendants

¶ 11     On June 26, 2014, foreclosure proceedings were initiated against defendants and others by Ocwen alleging defendants had defaulted on the monthly mortgage payment on February 1, 2013.  Defendants appeared through counsel and answered the complaint on September 24, 2014 asserting certain affirmative defenses which were voluntarily dismissed by defendants on June 4, 2015.

¶ 12    On July 22, 2015, Residential Credit Solutions Inc. (RCS) substituted into the case for Ocwen as plaintiff after acquiring the servicing rights on the subject Mortgage.

¶ 13    On October 13, 2015, defendants filed their first amended answer, affirmative defense, and counterclaim against plaintiff (Ditech) who was named as a third-party defendant. Defendants counterclaims were subsequently withdrawn.  Defendants' affirmative defense incorrectly identified plaintiff as the broker of the Mortgage but subsequently acknowledged Ditech.com was the Mortgage broker and a different entity than plaintiff.  In their affirmative defense, defendants alleged they were fraudulently induced to execute the Mortgage with GMAC making the Mortgage voidable and unenforceable.  On that basis, defendants argued plaintiff's foreclosure complaint should be dismissed.  Attached to the amended answer was one of the defendants', Marc Kovitz's (Kovitz), affidavit.  Kovitz's affidavit described the origination of the Mortgage and HELOC in 2004, his receipt of notices that GMAC had filed for bankruptcy as well as concerns regarding perceived "deceptive, false, and misleading statements" made by GMAC in procuring the Mortgage and HELOC and defendant's actions in response beginning with his December 19, 2012 correspondence to the U.S. Attorney General's Office requesting an investigation.

¶ 14    On September 8, 2016, GMAC filed a notice of bankruptcy notifying the circuit court of the Bankruptcy Action and Bankruptcy Sale Order.  The notice alleged defendants had not filed a proof of claim in the Bankruptcy Action and that the bankruptcy court's various orders including the Bankruptcy Sale Order enjoined them from seeking monetary relief against GMAC and plaintiff.

¶ 15    On September 14, 2016, after acquiring RCS' interest in the Mortgage, plaintiff (Ditech) substituted in as plaintiff.  The following day, plaintiff filed its answer to defendants' affirmative

defenses generally denying the allegations. Concluding that the counterclaims did not apply to it, plaintiff did not respond to those allegations.

¶ 16    On November 15, 2016, plaintiff filed its motion for summary judgment on both its foreclosure claim and defendants' affirmative defense. Plaintiff's summary judgment motion, supported by affidavit and other documents, alleged its standing to foreclose on the Mortgage, defendants' default thereon, and the amounts due and owing on the Mortgage. In the motion, plaintiff also alleged defendants' affirmative defense was incorrectly plead against it because GMAC, doing business as ditech.com, was the originating broker on the Mortgage and a different entity than plaintiff. Accordingly, plaintiff argued the affirmative defense was without merit and did not create a genuine issue of material fact that would preclude summary judgment.

¶ 17    Defendants responded to plaintiff's summary judgment motion and argued plaintiff was liable for the fraudulent inducement of the Mortgage on a theory of assignee (successor) liability and, as such, summary judgment was not appropriate where plaintiff failed to offer evidence to rebut their fraudulent inducement defense. Defendants did not challenge plaintiff's standing, the Mortgage default, or the amounts alleged to be due and owing on the Mortgage.

¶ 18    Plaintiff replied acknowledging that while an assignee is generally subject to defenses that can be raised against the assignor, the Bankruptcy Sale Order superseded that rule to protect assignees such as plaintiff and, as such, summary judgment was warranted. Specifically, plaintiff pointed to the indemnification language in the Bankruptcy Sale Order. Plaintiff argued the Mortgage was a purchased asset subject to the protection of the Bankruptcy Sale Order which precluded defendants from asserting a fraudulent inducement defense to plaintiff's foreclosure action.

¶ 19    Defendants filed a sur-response in which it argued the Mortgage was not a "Purchased Asset" subject to the Bankruptcy Sale Order because it was "procured by fraud" and "invalidated by such fraud." Defendants also argued the Bankruptcy Sale Order did not apply to defendants "under the 'discovery rule' related to fraud claims/defenses" because they alleged the fraud was not discovered until approximately January 28, 2013 and their injury was not discovered until February 2013—after the Bankruptcy Action was filed, the November 2012 deadline for "claims" in the Bankruptcy Action, the entry of the Bankruptcy Sale Order on November 21, 2012, and the February 15, 2013 sale closing when the Mortgage was transferred from GMAC to Ocwen. Defendants argued the validity of the Mortgage created a genuine issue of material fact precluding summary judgment.

¶ 20    Plaintiff filed a sur-reply arguing under Illinois law, a contract induced by fraud is voidable, not void *ab initio*, and would be part of the GMAC bankruptcy estate at the time of the sale of assets to Ocwen and that the Bankruptcy Sale Order applied to all alleged misconduct prior to the closing date of the sale of GMAC's assets to Ocwen, regardless of when the claim was discovered. Thus, plaintiff maintained defendants' alleged fraudulent inducement defense stemming from GMAC's origination of the Mortgage in 2004—prior to the February 15, 2013 closing—could not be raised as a defense to plaintiff's foreclosure action.

¶ 21    During argument on the summary judgment motion, defendants conceded that the Mortgage was not void *ab initio*, but argued they validly rescinded the mortgage prior to the February 15, 2013 sale and, as such, the mortgage no longer existed and was not an asset subject to the Bankruptcy Sale Order's protections. Defendants pointed to a February 4, 2013 telephone conversation between a GMAC representative and one of the defendants (Kovitz) advising GMAC he would no longer pay on the mortgage. Defendants also cited letters written by Kovitz

to GMAC on February 8, 2013, February 12, 2013, and February 22, 2013 as further evidence of the rescission.

¶ 22    Kovitz's February 8, 2013 correspondence to GMAC alleged fraud but did not indicate any intention to rescind the Mortgage contract.  The only reference in the correspondent to potential relief sought was the restatement of Kovitz's prior oral statement to a GMAC employee that he was seeking financial compensation for damages in the amount of two million dollars.

¶ 23    In his February 12, 2013 correspondence to GMAC, Kovitz reiterated his allegations of fraud, but did not indicate any intention to rescind the Mortgage contract nor was any other relief sought.  Instead, Kovitz asked GMAC what they intended to do to correct the alleged injury.

¶ 24    In Kovitz's February 22, 2013 correspondence to GMAC, he stated,

> "we feel it is appropriate to suspend all future first mortgage and HELOC payments and void your contracts.
>
> * * * *
>
> In conclusion, we are demanding that you tear up the first mortgage and HELOC contracts, release your liens and any future claims to our property and pay us compensatory and punitive payment of $250,000 immediately."  (Emphasis omitted.)

¶ 25    The correspondence concluded, "I look forward to your prompt reply ***."

¶ 26    Defendants' counsel further argued defendants did not receive notice of the Bankruptcy Action stating "[defendants] didn't receive any formal notice and also I think the bankruptcy order—the claims—referring to, they don't even qualify as a claimant under that bankruptcy order."

¶ 27    On May 16, 2017, the circuit court granted plaintiff's motion for summary judgment on both plaintiff's foreclosure complaint and defendants' fraudulent inducement affirmative defense. In its reasoning, the court explained there was no evidence of rescission of the Mortgage by defendants where there was no evidence of any intention to tender the loan proceeds back to GMAC which would be required if the contract was rescinded. The court further reasoned that even if defendants had properly elected to rescind the Mortgage it would not automatically become void on the date of defendants' February 2013 correspondences such that it would no longer be an asset subject to the Bankruptcy Sale Order. The court subsequently entered a judgment of foreclosure and sale.

¶ 28    On June 15, 2017, defendants filed a motion to reconsider arguing the circuit court erred in its application of the law in granting plaintiff's summary judgment motion. Specifically, defendants argued the circuit court erred in applying the law where it (1) considered on summary judgment "the question of whether *** Defendants properly rescinded the subject mortgage loan prior to GMAC's sale of assets" in the Bankruptcy Action because this was an issue of material fact reserved for trial[;]" (2) found defendants had not rescinded the Mortgage contrary to "prevailing law concerning rescission of voidable contracts[;]" and (3) awarded summary judgment where genuine issues of material fact existed concerning whether the Mortgage was "legally valid and enforceable before being purportedly 'sold' to Ocwen on February 15, 2013 pursuant to the November 21, 2011 GMAC Bankruptcy Order." On August 22, 2017, the circuit court denied defendants' motion to reconsider.

¶ 29    On February 26, 2018, the Property was sold back to plaintiff at the judicial sale. On May 29, 2018, the circuit court entered an order which approved the report of sale and distribution and also confirmed the sale.

¶ 30    Defendants' timely filed their appeal.  This appeal followed.

¶ 31                                        ANALYSIS

¶ 32    On appeal, defendants first argue the circuit court erred in in granting plaintiff's motion

for summary judgment contending the question of whether defendants' effectively rescinded the

Mortgage prior to the sale of GMAC's assets in the Bankruptcy Action raises a genuine issue of

material fact that cannot be decided on summary judgment.  Defendants additionally argue the

circuit court incorrectly concluded defendants failed to effectuate rescission of the voidable

Mortgage contract because they did not return, or state their intention to return, the loan proceeds

of the Mortgage back to GMAC finding defendants' telephone conversations and three February

2013 correspondences to GMAC insufficient to effectuate rescission.  Defendants further argue

the circuit court ruled on genuine issues of material fact with respect to whether GMAC had a

right to enforce the contract against defendants prior to the February 15, 2013 closing of

GMAC's asset sale in the Bankruptcy Action and whether defendants received timely notice of

the Bankruptcy Action in order to adjudicate their fraudulent inducement claim in that

proceeding.

¶ 33                                   Standard of Review

¶ 34    The parties dispute the appropriate standard of review on appeal.  Defendants argue the

applicable standard of review of a circuit court's granting of summary judgment is *de novo* citing

*Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43.  While acknowledging

this court reviews the granting of summary judgment *de novo*, plaintiff argues that because

defendants' arguments were pursued for the first time in their motion to reconsider, the circuit

court's denial of the motion to reconsider should be reviewed for an abuse of discretion citing

*Greer v. Yellow Cab Company*, 221 Ill. App. 3d 908, 915 (1991); *Freeman v. Augustine's, Inc.*, 46 Ill. App. 3d 230, 236 (1977); and *In re Marriage of Wilson*, 193 Ill. App. 3d 473, 478 (1990).

¶ 35    Plaintiff also argues these "rescission-related arguments" developed for the first time in defendants' motion to reconsider are forfeited on appeal.  We begin by addressing plaintiff's forfeiture argument as our conclusion on this point informs the applicable standard of review.

¶ 36    We disagree with plaintiff that defendants' arguments were forfeited as they were sufficiently raised prior to the circuit court's summary judgment ruling.  Here, we acknowledge the circuit court's comment that throughout the proceedings both parties' arguments morphed into very different arguments each time they were presented at oral arguments.  We also note the circuit court has discretion to hear arguments even if raised for the first time in a motion to reconsider where there is a reasonable explanation why the issue was not raised earlier.  *In re Marriage of Ostrander*, 2015 IL App (3d) 130755, ¶ 17.  In any event, plaintiff did not argue waiver or forfeiture before the circuit court and thus plaintiff's waiver arguments would be forfeited even if defendants had only raised them for the first time in their motion to reconsider which, as we stated above, is not the case.  See *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226, 236 (2008) (holding "The doctrine of wavier applied to arguments raised for the first time on appeal.").

¶ 37    Because we disagree defendants' arguments on appeal were raised for the first time in their motion to reconsider, we review defendants' claims on appeal *de novo*.  See *Belluomini v. Zaryczny*, 2014 IL App (1st) 122664, ¶ 20 (explaining that "where a motion to reconsider only asks the trial court to reevaluate its application of the law to the case as it existed at the time of judgment, the standard of review is *de novo*."); see also *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008) (stating "In appeals from summary judgment rulings, review is *de novo*.").  "Because

we review the grant of summary judgment *de novo*, we may affirm the circuit court's decision on any ground in the record, regardless of whether the court relied on that ground or whether the court's reasoning was correct." *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 163 (2004).

¶ 38                                    Summary Judgment

¶ 39     Section 2-1005 of the Illinois Code of Civil Procedure (Code), 735 ILCS 5/2-1005 (West 2016), provides for summary judgment and is considered "a drastic means of disposing of the litigation" which should only be allowed "where the right of the moving party is clear and free from doubt." *Williams*, 228 Ill. 2d at 417.  Nevertheless, summary judgment is appropriate where "the plaintiff fails to establish any element of the cause of action" or where,

> "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005 (West 2016).

¶ 40     To decide whether a genuine issue as to any material facts exists,

> "a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent.  A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts."  *Williams*, 228 Ill. 2d at 417.

¶ 41          Question of a Contract's Rescission is Subject to Summary Judgment

¶ 42     Defendants cite *Solomon Iron & Metal Co. v. Bradford*, 33 Ill. App. 2d 452 (1962), and argue "whether a contract has been forfeited or rescinded by a party is a question of fact for trial,

which may be deduced from circumstances or course of conduct clearly showing such rescission or forfeiture." Based on this statement defendants contend the question of whether a contract was rescinded can never be appropriately resolved on summary judgment. Defendants reliance on *Solomon Iron & Metal* is misplaced as the issues in that case did not involve summary judgment but review of the trial court's ruling on the evidence following a bench trial and evidence concerning the parties' actions resulting in a forfeiture of their contract under the contract's forfeiture clause. See *id*. at 455-58. In its ruling, the *Solomon Iron & Metal* court reiterated one of the party's arguments raised on appeal: "that whether a contract has been forfeited or rescinded *** is a question of fact which may be deduced from the circumstances or course of conduct clearly showing recission or forfeiture[.]" *Id*. at 455. However, this statement is not a blanket preclusion to summary judgment. This is particularly true where here, unlike in *Solomon Iron & Metal*, a party is seeking summary judgment and has alleged "there is no genuine issue as to any material fact" on the question of rescission and "the moving party is entitled to a judgment as a matter of law" pursuant to section 2-1005 of the Code. See 735 ILCS 5/2-1005 (West 2016) (Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

¶ 43    As plaintiff highlights, there have been a number of cases affirming a circuit court's grant of summary judgment on the issue of whether rescission of a contract has occurred. By way of example, in *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, this court affirmed the circuit court's grant of summary judgment on the issue of rescission finding, based on incontrovertible judicial admissions, the life insurance policy at issue had not been rescinded due to the plaintiff's unreasonable delay. *Id*. at ¶¶ 28, 31-34, 38. In *Illinois State Bar Ass'n*

*Mutual Insurance Co.* v. *Coregis Insurance Co.*, 355 Ill. App. 3dat 172, this court affirmed the circuit court's grant of summary judgment on the issue of rescission finding the voidable insurance policy properly rescinded based on a material misrepresentation made to the defendant. *Id*.

¶ 44    Accordingly, we find that where no genuine issue exists as to any material fact concerning whether rescission occurred, summary judgment is appropriate. See 735 ILCS 5/2-1005 (West 2016).  There is no question the Bankruptcy Sale Order indemnified plaintiff from any actions, omissions, or other wrongdoing doing by GMAC prior to the bankruptcy sale if its assets.  The issue of whether there was a rescission before the bankruptcy sale turns on the question of whether defendants returned the money it received from GMAC or offered to return it, or where return was impossible, whether an order awarding rescission had been obtained by defendants prior to the bankruptcy sale.  It is undisputed that the Mortgage proceeds were not returned and return was not offered.  It is also undisputed defendants never obtained a court order awarding rescission of the Mortgage contract prior to the bankruptcy sale.  Accordingly, there are no disputed issues of fact so the issue of whether a rescission of the contract occurred prior to the bankruptcy sale such that the Mortgage would not be an asset subject to the Bankruptcy Sale Order is a legal question that can be resolved by summary judgment.

¶ 45    Defendants argue the circuit court erred in finding defendants were required to reinstate the status quo by returning or stating their intention to return the Mortgage proceeds to GMAC to effectuate rescission of the Mortgage contract.  Defendants concede this was not done but argue it was an impossibility due to no fault of their own.  Accordingly, they argue this return of the status quo was unnecessary to effectuate rescission.  As we explain below, while we agree with defendants that a return of the status quo does not always preclude rescission, we still find

defendants failed to rescind the Mortgage contract prior to the February 15, 2013 closing on the sale of GMAC's assets in bankruptcy as would be necessary to avoid the effect of the Bankruptcy Sale Order's indemnification language barring defendants' affirmative defense.

¶ 46 "Rescission is the cancelling of a contract so as to restore the parties to their initial status." (Internal quotation marks omitted.) *Freedberg*, 2012 IL App (1st) 110938, ¶ 27. "Where a contract is rescinded, the rights of the parties under that contract are vitiated or invalidated." *Corgis Insurance Co.*, 355 Ill. App. 3d at 165.

¶ 47 Defendants argue "[GMAC] fraudulently induced them into the Mortgage agreement by falsely stating their property was appraised by a certified appraiser and valued at $268,000" and this fraud was the basis for their rescission of the Mortgage contract.

¶ 48 The parties do not dispute the premise that "[a] contract induced by fraud is not void but is voidable at the election of the party claiming to have been defrauded." *23-25 Building Partnership v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 757 (2008). Where a contract is "merely voidable, the innocent party can either opt to void the contract based upon that defect, or choose, instead, to waive that defect and ratify the contract despite it." *Corgis Insurance Co.*, 355 Ill. App. 3d at 164-65; *23-25 Building Partnership*, 381 Ill. App. 3d at 757.

¶ 49 "One seeking to rescind a transaction on the ground of fraud or misrepresentation must elect to do so promptly after learning of the fraud or misrepresentation, must announce his purpose and must adhere to it." (Internal quotation marks omitted.) *Freedberg*, 2012 IL App (1st) 110938, ¶ 27. Common law "rescission traditionally required either that the rescinding party return what he received before a rescission could be effected (rescission at law), or at least that a court affirmatively decree recission (recission in equity). *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 264 (2015). Thus, "a party seeking rescission must restore the other

party to the status quo existing at the time the contract was made" or obtain from a court of equity "the remedy of rescission[.]" (Internal quotation marks omitted.) *Corgis Insurance Co.*, 355 Ill. App. 3d at 165.

¶ 50 Defendants point out, "[r]estoration of the *status quo ante* will not be required when restoration had been rendered impossible by circumstances not the fault of the party seeking rescission, and the party opposing the rescission has obtained a benefit from the contract." *23-25 Building Partnership*, 381 Ill. App. 3d at 757. Nevertheless, an unreasonable delay in taking the necessary steps to set aside a fraudulent contract will have the effect of affirming it. [Citation.]" *Coregis Insurance Co.*, 355 Ill. App. 3d at 165.

¶ 51 Defendants' Actions were Not a Recission of the Mortgage Contract

¶ 52 Defendants argue rescission of the Mortgage contract was effected prior to the February 15, 2013 bankruptcy sale because (1) "Defendants clearly declared their intention to cancel the mortgage transaction and suspend any future payments when they called GMAC on February 4, 2013 and February 12, 2013 which was a matter of days after Defendants discovered GMAC's fraud" and "made no further mortgage payments after February 2013" consistent with their repudiation of the Mortgage contract. Defendants further argue they "were not required to tender back, or even offer to tender back, the loan proceeds they received nine years earlier in order to rescind the Mortgage because it was impossible for them to do so through no fault of their own."

¶ 53 Even if we were to accept as true that GMAC fraudulently induced defendants to execute the Mortgage contract; defendants' February 4 and 12, 2013 telephone calls to GMAC and subsequent correspondence were a sufficient announcement of their intention to rescind the Mortgage contract; and it was impossible for defendants to restore the status quo due to no fault of their own, we still could not conclude the Mortgage contract had been rescinded prior to the

February 15, 2013 closing of GMAC's asset sale. This is because pursuant to Illinois law, upon learning of the alleged fraud and voidability of their Mortgage contract, defendants had two options: (1) restore the status quo or (2) obtain from a court of equity the remedy of rescission. See *Corgis Insurance Co.*, 355 Ill. App. 3d at 165; see also *Jesinoski*, 574 U.S. at 264. It is undisputed in the record defendants did neither and thus failed to effectuate rescission of the Mortgage contract.

¶ 54    Defendants specifically argue they "never actually possessed any of the loan proceeds from the subject mortgage loan[—the proceeds having been immediately disbursed from the previous mortgage creditor to GMAC upon refinance—] and, therefore, it was factually impossible for Defendants to return said loan proceeds to GMAC through no fault of Defendants." In this situation, defendants only other option for effectuating rescission was to obtain the remedy of rescission from a court of equity after proving "there has been some fraud in the making of a contract, such as an untrue statement or the concealment of a material fact, or where one party enters into a contract relying on the other party's innocent misrepresentation." *Corgis Insurance Co.*, 355 Ill. App. 3d at 165; see also *Jesinoski*, 574 U.S. at 264.

¶ 55    It is undisputed in the record that defendants never sought from a court the remedy of rescission prior to the February 15, 2013 sale. There has never even been a determination that defendants were fraudulently induced such that the remedy of rescission would be appropriately awarded to defendants. Because there was no rescission of the Mortgage contract by defendants prior to the February 15, 2013 closing on the bankruptcy sale of GMAC's assets, the Mortgage was part of the assets sold by GMAC in the Bankruptcy Action and subject to the Bankruptcy Sale Order. The Bankruptcy Sale Order specifically precludes defendants' affirmative defense to

avoid foreclosure were the injury alleged is based on GMAC's actions in originating the Mortgage contract in 2004—well before the 2013 bankruptcy sale.

¶ 56     Defendants citations to *John Burns Construction Co. v. Interlake, Inc.*, 105 Ill. App. 3d 19 (1982); *23-25 Building Partnership*, 381 Ill. App. 3d at 751; *Hakala v. Illinois Dodge City Corp.*, 64 Ill. App. 3d 114 (1978); *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614 (1993); and *Rigdon v. Walcott*, 43 Ill. App. 352 (1891) do not cure the fatal defect in defendants' argument here.  In all of the cases cited by defendants, rescission of the various contracts at issue was sought from the trial court as a remedy.  Here, the unique facts of this case require a rescission effective prior to the February 15, 2013 closing of GMAC's asset sale to avoid the effects of the Bankruptcy Sale Order.  Accordingly, defendants impermissibly seek a retroactive award of rescission.

¶ 57     Defendants' stated in their sur-response to plaintiff's summary judgment reply they discovered the alleged fraud on January 28, 2013.  Defendants stopped paying the mortgage in February 2013 and continued to reside in their home receiving the benefit of the Mortgage loan for over a year and seven months when on September 24, 2014 they—for the first time—raised GMAC's alleged fraud in a court proceeding as an affirmative defense to the instant foreclosure action.  However, even in their initial affirmative defense filed on September 24, 2014, defendants did not allege rescission but merely argued fraud made the Mortgage contract voidable and, on that basis, sought dismissal of the foreclosure action.  While we acknowledge defendants engaged in communications with GMAC and its successors in interest about  the alleged fraud after they contend it was discovered, defendants do not argue nor does the record reveal any of these entities acknowledged the fraud or agreed to a rescission of the Mortgage contract—the opposite.

¶ 58    We find that no genuine issue of material fact existed concerning the issue of rescission and that no such rescission was effectuated prior to GMAC's sale of assets in the Bankruptcy Action. Accordingly, the Mortgage contract was part of the assets sold and subject to the Bankruptcy Sale Order preluding defendants' affirmative defense. Thus, summary judgment was appropriate.

¶ 59    In the Bankruptcy Action GMAC sold to Ocwen assets including defendants' Mortgage contract. Ultimately plaintiff became a successor of Ocwen and, pursuant to the terms of the Bankruptcy Sale Order, is also expressly entitled to the indemnifications set forth in the order. Defendants' fraudulent inducement claim stems from GMAC's alleged conduct in originating the Mortgage loan in 2004. As set forth in the Bankruptcy Sale Order, the bankruptcy court entered the order pursuant to various sections of the Bankruptcy Code including section 363 of the Bankruptcy Code (11 U.S.C.A. § 363 (West 2012)).

¶ 60    The Bankruptcy Sale Order expressly precludes defendants' affirmative defenses stating:

> "No Person shall assert, and the Purchaser and the Purchased Assets shall not be subject to, any *** defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), Liabilities, Claims, and Interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser of the Debtors, or any obligation of any other party, under or with respect to, any Purchased Assets (including, without limitation, an Assumed Contract), with respect to any act or omission that occurred prior to the Closing or with respect to any Other Agreement or any obligation to Debtors that is not an Assumed Liability.

* * * *

> Neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing."

¶ 61 The Bankruptcy Sale Order controls to preclude defendants' fraudulent inducement affirmative defense stemming from GMAC's actions in originating the Mortgage loan in 2004 asserted against plaintiff's foreclosure action. While not binding on this court, we note other courts have affirmed the granting of summary judgment precluding claims against GMAC's successors in interest where the successor came to service the mortgage at issue through the asset purchase agreement approved in GMAC's Bankruptcy Action based on the Bankruptcy Sale Order's language indemnifying the successor from claims based on GMAC's conduct and where said claims originated prior to the asset sale. See *Ishee v. Federal National Mortgage Ass'n*, 641 Fed. Appx 438, 444 (2016); see also *Harrington v. Federal National Mortgage Ass'n*, 2016 WL 3561858, *8 (2016).

¶ 62 We also find no genuine issue of material fact existed concerning plaintiff's right to foreclosure. Defendants do not dispute the allegations contained in plaintiff's foreclosure complaint, supporting documents, and affidavits including those attached to plaintiff's motion for summary judgment. Defendants only claim the Mortgage contract is not enforceable and the Bankruptcy Sale Order inapplicable because defendants rescinded the Mortgage contract prior to the February 15, 2013 closing. However, as discussed above, in construing the pleadings, depositions, admissions, and affidavits strictly against plaintiff and liberally in favor of defendants, there is no dispute the Mortgage contract was not rescinded prior to the sale of

GMAC's assets in the Bankruptcy Action and is thus subject to the Bankruptcy Sale Order and its indemnification language. See *Williams*, 228 Ill. 2d at 417.

¶ 63    Plaintiff's uncontradicted allegations in support of its foreclosure complaint include all pertinent information concerning the Mortgage at issue, the date of the Mortgage, identification of the parties to the Mortgage, a legal description of the mortgaged premises, and a statements as to defendants' default. Plaintiff identified itself as the current legal holder of the Mortgage which defendants also do not dispute and requested a judgment of foreclosure and sale of the Property. True copies of the Mortgage and note at issue were attached to plaintiff's complaint. Plaintiff's complaint, supported by affidavits, was tailored to the specific facts and circumstances of defendants' Mortgage and default and the specific relief sought and satisfied the pleading requirements of the Foreclosure Law (735 ILCS 5/15-1501 *et seq.* (West 2014)). Defendants' filings did not give rise to any genuine issue of material fact regarding their default and thus summary judgment was properly awarded. See *PNC Bank, National Ass'n v. Zubel*, 2014 IL App (1st) 130976, ¶¶ 15, 19, 23 (affirming the circuit court's award of summary judgment to a bank in a foreclosure action where record contained sufficient evidence to establish a *prima facie* case for foreclosure and defendant failed to allege any competent evidence to rebut those claims).

¶ 64                    Notice of Bankruptcy Proceeding

¶ 65    Defendants argue "Plaintiff failed to demonstrate there were no genuine issues of material fact concerning whether or not Defendants received timely notice of the GMAC bankruptcy proceeding to properly avail them of the bankruptcy framework to adjudicate their defense of fraudulent inducement in respect to their constitutional due process rights." We disagree that this presents a genuine issue of material fact precluding summary judgment.

¶ 66 We begin by noting Kovitz's October 8, 2015 affidavit contradicts his notice argument as he states therein that sometime after January 24, 2012, but before January 30, 2013, "we received *another* notice from GMAC Mortgage Company ("GMACM") stating that GMACM filed for bankruptcy protection and that the new loan service for our mortgage loan would be Ocwen Loan Servicing." (Emphasis added.)

¶ 67 Moreover, as set forth in the Bankruptcy Sale Order, notice of the sale of GMAC's assets was published in *The Wall Street Journal* and *The New York Times* prior to the sale. Additionally, in correspondences dated March 7, 2013 and April 9, 2013, on which defendants were copied, reference is made not only to GMAC's Bankruptcy Action but also the February 15, 2013 sale of GMAC's assets such that defendants were aware of the proceedings which remained ongoing at the time.

¶ 68 Moreover, defendants cite no authority to support the allegation that a failure to provide statutory notice occurred which would defeat the effect of the Bankruptcy Sale Order and its indemnification of plaintiff against defendants' affirmative defense. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring "contentions of the appellant and the reasons therefor, with citation of the authorities *** relied on" to be set forth in appellants brief and further stating "[p]oints not argued are forfeited").

¶ 69 As plaintiff points out, defendants' arguments here amount to a collateral attack of the Bankruptcy Sale Order. While we recognize "a judgment rendered by a court which fails to acquire jurisdiction of either the parties or the subject matter of the litigation may be attacked and vacated at any time or in any court, either directly or collaterally" (see *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 309 (1986); see also *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989); see also *Morey Fish Co. v. Rymer Foods, Inc.*, 158 Ill. 2d 179, 186-87 (1994)),

defendants failure to develop this argument and provide authority for such an attack precludes our consideration of the issue. See *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 19 (holding an unsupported claim is insufficient to create a genuine issue of material fact); see also *International Insurance Co.*, 242 Ill. App. 3d at 630 (1993) (stating "The facts establishing an affirmative defense must be pleaded with the same degree of specificity required by a plaintiff to establish a cause of action."); see also Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); see also *People v. Pope*, 2020 IL App (4th) 180773, ¶ 75 (holding reviewing courts are entitled to have issues clearly defined with citation to pertinent authority and are not simply depositories into which the appealing party may dump the burden of argument and research).

¶ 70    Therefore, we find no genuine issue of material fact existed with respect to notice to defendants of the Bankruptcy Action that would preclude summary judgment here.

¶ 71    Accordingly, we affirm the circuit court's award of summary judgment in favor of plaintiff on both plaintiff's complaint for foreclosure as well as defendants' affirmative defense.

¶ 72                                         CONCLUSION

¶ 73    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 74    Affirmed.